IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERRY LONDON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 12 CV 8509 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| DAVID GUZMAN, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Plaintiff Kerry London ("London") sues Defendants Chicago Police Officers David Guzman ("Officer Guzman"), Lawrence Stec ("Officer Stec") and W. Murphy ("Officer Murphy"), and the City of Chicago (collectively, "Defendants") for false arrest under 42 U.S.C. § 1983, in violation of the Fourth Amendment, and for state-law malicious prosecution. Before the Court is Defendants' motion for summary judgment. For the following reasons, the motion is granted.

**I. BACKGROUND**

**A. Facts**[1]

On November 15, 2011, Officer Guzman prepared a Complaint for Search Warrant and a Search Warrant regarding the investigation of Kerry "Red" London for the sale of a controlled substance—namely, crack cocaine—with the assistance of a "John Doe," confidential informant (the "CI"), who reported illegal narcotics activity taking place at the basement apartment located

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and supporting materials. Although the Court "need consider only the cited materials," it "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

at 8010 S. Manistee Street, Chicago, Cook County, Illinois. The Complaint for Search Warrant states, *inter alia*, that Officer Guzman met with the CI on November 14, 2011; that the CI informed Officer Guzman that he had had been smoking crack cocaine for over ten years; that he had purchased crack cocaine from "Red" for the past month; that he had purchased crack cocaine on "at least three different occasions in the last seven days"; and, that one day prior to this meeting, on November 13, 2011, the CI arrived at the location of 8010 S. Manistee Street, Chicago, Illinois where he purchased and used crack cocaine from "Red," and experienced the "same euphoric feeling" he felt in the past after smoking crack cocaine. Pl.'s Local Rule 56.1 Statement of Additional Facts Ex. C.

The Complaint for Search Warrant includes a specific description of the November 13, 2011 drug transaction as follows. The CI was greeted by "Red" in the hallway of the 8010 S. Manistee Street, Chicago, Illinois apartment building. The CI then requested a portion of crack cocaine in return for United States currency. After agreeing on a price, "Red" briefly went into the basement apartment while the CI stood at the doorway of the apartment. "Red" returned holding several clear plastic knotted bags of crack cocaine, which he allowed the CI to inspect for quantity and quality. Following the inspection, the CI tendered United States currency to "Red." Thereafter, the CI observed "Red" return back into the basement apartment with the remaining portions of crack cocaine.

In addition, the Complaint for Search Warrant states that Officer Guzman and the CI relocated to 8010 S. Manistee Street, Chicago, Illinois where the CI pointed to the brick apartment building and stated, "In the basement apartment is where Red sells Crack from." Id. Further, the Complaint for Search Warrant specifies that a DATAWAREHOUSE check of the area of 8010 S. Manistee Street, Chicago, Illinois revealed a subject named Kerry London, and

that the CI positively identified the DATAWAREHOUSE photo of Kerry London as "Red," the subject who sold him crack cocaine. The Complaint for Search Warrant did not state whether the check identified 8010 S. Manistee Street Chicago, Illinois as London's residence. Nor did it indicate whether the CI had been used at any time prior to this date.

Officer Guzman signed each page of the Complaint for Search Warrant and verified that the information contained on the page was correct. He then presented the Search Warrant and the Complaint for Search Warrant to an Assistant Cook County State's Attorney, who, in turn, approved both documents, signed each page of the documents, and returned them to Officer Guzman. The next day, on November 16, 2011, Officer Guzman produced the informant in person to the state-court judge. The informant signed each page of the Complaint for Search Warrant in the presence of Officer Guzman, verifying that the information was correct. The state-court judge reviewed the Complaint for Search Warrant and the Search Warrant and signed each page in Officer Guzman's presence, approving the finding of probable cause for execution of the Search Warrant. Officer Guzman declares that to the best of his knowledge all of the information in the Complaint and Search Warrant is true. The Search Warrant issued to search "Kerry London," also known as "Red," and the entire basement apartment located at 8010 S. Manistee Street Chicago, Illinois.

On November 17, 2011, at approximately 4:00 p.m., Officers Guzman, Murphy and Stec executed the Search Warrant at 8010 S. Manistee Street, Chicago, Illinois. Upon entry, the officers observed London, detained him and searched the residence, wherein they seized two clear plastic knotted bags of crack cocaine, two bundles of narcotics packaging, and $155 of United States currency. There were two other adults present in the apartment at the time of the officers' entry and arrest of London: Tanya Bennett, a forty-five year old female and Sheila

Willis, a sixty-six year old female. London was charged with possession of a controlled substance pursuant to 720 Ill. Comp. Stat. 570/402. The two other adults present in the apartment were not arrested or charged with a crime.

During London's preliminary hearing on December 8, 2011, Officer Guzman testified that London was in the kitchen area when the officers entered the subject property. Officer Guzman further testified that the narcotics recovered were not found on London's person, and that London never made any admission that the bedroom where the narcotics were found belonged to him. Officer Guzman testified that he believed the narcotics were London's because he was "closest to the bedroom." Pl.'s Local Rule 56.1 Statement of Additional Facts Ex. G. Following the preliminary hearing, the state-court judge made a finding of no probable cause, and the charges against London were dismissed.

## A. Procedural History

On October 23, 2012, London initiated this lawsuit. London filed a First Amended Complaint on December 4, 2012, asserting two claims: 1) false arrest based on an unreasonable procurement of a search warrant; and 2) a supplemental state-law claim for malicious prosecution. On April 18, 2013, London filed a motion to amend his complaint in order to add additional facts supporting his false arrest claim, and to separate this claim into two separate counts. The motion was denied on April 26, 2013. Defendants now move for summary judgment. The instant motion is fully briefed and before the Court.

## II. DISCUSSION

## A. Standard of Decision

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); see also Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Majors, 714 F.3d at 532 (citations omitted). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Id. at 532-33 (quoting Ellis v. CCA of Tenn. LLC, 650 F.3d 640, 646 (7th Cir. 2011)).

## B. False Arrest Based on an Unreasonable Procurement of a Search Warrant

London alleges that Defendants executed a constitutionally invalid search warrant, which resulted in his unlawful arrest. "To prevail on his constitutional claim for false arrest, [London] must show there was no probable cause for his arrest." Williams v. City of Chi., 733 F.3d 749, 756 (7th Cir. 2013) (citations omitted). "Probable cause exists if at the time of the arrest, the facts and circumstances within the officers' knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Williamson v. Curran, 714 F.3d 432, 441 (7th Cir. 2013) (internal quotation marks and citation omitted). "Probable cause requires more than a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction." Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 679 (7th Cir. 2007) (citing Woods v. City of Chi., 234 F.3d 979, 996 (7th Cir. 2000)). Further, "[t]he existence of probable cause does not depend on the truth of a complaint of wrongdoing." Williamson, 714 F.3d at 441 (citing Mustafa v. City of Chi., 442 F.3d 544, 548 (7th Cir. 2006)).

5

London argues that there was no probable cause for the search and subsequent arrest because the information used to procure the Search Warrant was provided by an untested informant and lacked sufficient, independent corroboration by Officer Guzman. "An affidavit submitted in support of a search-warrant application will be sufficient to support a probable-cause finding if, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." Junkert v. Massey, 610 F.3d 364, 367-68 (7th Cir. 2010) (internal quotation marks and citation omitted). Additionally, "[a]ffidavits and complaints supporting warrants are presumed valid." United States v. Johnson, 580 F.3d 666, 670 (7th Cir. 2009). Thus, "[a] warrant request violates the Fourth Amendment [only] if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." Betker v. Gomez, 692 F.3d 854, 860 (7th Cir. 2012) (internal quotation marks and citation omitted).

London challenges the CI's reliability generally, and specifically argues that "the 'corroboration' asserted by Guzman as to the CI's tip is so unincriminating that it cannot possibly support the conclusion that probable cause existed for a search." Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 7. Where, as here, the Complaint for Search Warrant "relies on information supplied by an informant, the totality-of-the-circumstances inquiry generally focuses on the informant's reliability, veracity, and basis of knowledge." Junkert, 610 F.3d at 368 (internal quotation marks and citation omitted). Several, non-exclusive factors bear on the analysis, including: "(1) the degree of police corroboration of the informant's information; (2) whether the information is based on the informant's personal observations; (3) the amount of detail provided by the informant; (4) the interval of time between the events reported by the

6

informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge." Id. (citation omitted). "No one factor is determinative and a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." United States v. Searcy, 664 F.3d 1119, 1123 (7th Cir. 2011) (internal quotation marks and citation omitted).

Based on the totality of the circumstances, Officer Guzman's Complaint for Search Warrant provided sufficiently reliable information to support a finding of probable cause and the issuance of the Search Warrant. Importantly, the CI provided a first-hand account of criminal activity—namely, numerous drug transactions, the last of which having occurred one day prior to his meeting with Officer Guzman. The CI claimed that he went to the 8010 S. Manistee Street, Chicago, Illinois apartment building wherein the following occurred: he was greeted by "Red" in the hallway, he requested crack cocaine from "Red," they agreed on a price for a portion of crack cocaine, he observed "Red" enter into and return from the basement apartment holding several clear plastic knotted bags of crack cocaine, which he inspected for quantity and quality before tendering United States currency over to "Red" and, thereafter, he observed "Red" return back into the basement apartment with the remaining portions of crack cocaine. Such "[f]irst-hand observations [by a CI] support a finding of reliability." United States v. Lloyd, 71 F3.d 1256, 1263 (7th Cir. 1995) (internal quotation marks and citations omitted) (second alteration in original). The CI's statement was also against his penal interest, which also supports a finding of reliability. United States v. Johnson, 289 F.3d 1034, 1039 (7th Cir. 2002), abrogated on other grounds as recognized by United States v. Vaughn, 433 F.3d 917 (7th Cir. 2006).

Moreover, the affidavit further explained why the CI was able to identify that the substance in question was an illicit drug, i.e, the CI claimed that when he used it, he experienced

7

the "same euphoric feeling" he felt in the past after smoking crack cocaine. Pl.'s Local Rule 56.1 Statement of Additional Facts Ex. C. This too shows reliability. See, e.g., United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003). Additionally, this information was reported three days prior to the application for the Search Warrant which constitutes "a relatively short period of time," and "certainly was not stale." Searcy, 664 F.3d at 1122. The CI also personally appeared before the warrant-issuing judge. Finally, Officer Guzman largely corroborated the CI's information. For example, Officer Guzman, accompanied by the CI, drove to the subject property, 8010 S. Manistee Street, Chicago, Illinois, where the CI pointed to the brick apartment building and stated, "In the basement apartment is where Red sells Crack from." Pl.'s Local Rule 56.1 Statement of Additional Facts Ex. C. Further, Officer Guzman completed a DATAWAREHOUSE check of the area of 8010 S. Manistee Street, Chicago, Illinois, which revealed a subject named Kerry London. Then, the CI positively identified the DATAWAREHOUSE photo of London as "Red," the individual who sold him crack cocaine.

Notwithstanding the actions Officer Guzman took to corroborate the CI's account, London argues that these efforts were not reasonable because Officer Guzman did not confirm proof of residency at the subject property or otherwise conduct surveillance of the property to verify the veracity of the CI's account of criminal activity outside 8010 S. Manistee Street, Chicago, Illinois. However, the fact that London "can point out additional things which could have been done but were not does not in any way detract from what was done." United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000). As recounted above, based on the totality of the circumstances, the effort made by Officer Guzman to corroborate the CI's statements was sufficient to support the issuance of the Search Warrant.

8

According to Defendants, because the Search Warrant was valid and supported by probable cause they are entitled to summary judgment on Count I. London, however, maintains that even if the Court concludes that the Search Warrant was supported by probable cause, Officers Guzman, Stec, and Murphy lacked probable cause to arrest him. "As the party with the burden of proof," London must "present evidence that, if believed by the trier of fact, would support a finding that his constitutional rights were violated." Rooni v. Biser, No. 13-1511, 2014 WL 407475, at *3 (7th Cir. Feb. 4, 2014) (citing Sow v. Fortville Police Dep't, 636 F.3d 293, 300 (7th Cir. 2011)).

London attempts to create an issue of material fact through his pleading titled, "Kerry London Affidavit." This pleading, however, neither constitutes a sworn affidavit, nor an unsworn declaration. "[A]n affidavit is admissible in a summary judgment proceeding only if it is sworn to before an officer authorized to administer an oath, such as a notary public." Trapaga v. Cent. States Joint Bd. Local 10, No. 05 C 5742, 2007 WL 1017855, at *2 (N.D. Ill. Mar. 30, 2007) (citing Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985)). London's purported affidavit was not sworn. Nonetheless, pursuant to 28 U.S.C. § 1746, "an unsworn declaration which is dated and signed by the declarant 'under penalty of perjury' and verified as 'true and correct' may be used, in lieu of a sworn affidavit, to support or respond to a motion for summary judgment." Id. (citations omitted). But London's unsworn pleading was not made under penalty of perjury; and, therefore it does not constitute an unsworn affidavit.

In any event, even accepting London's assertions as true, his statements are not sufficient to defeat summary judgment. London claims that he did not live at 8010 S. Manistee Street, Chicago, Illinois, that he did not sell drugs "out of that home to anyone" in the months and days prior to November 18, 2011, and that he has never sold crack cocaine to anyone. Pl.'s Local

Rule 56.1 Statement of Additional Facts Ex. I. Whether London actually resided at 8010 S. Manistee Street, Chicago, Illinois, or engaged in drug transactions "is not material to the determination of probable cause; the test is an objective one—what the police know, not whether they know the truth, that matters." Sheik-Abdi v. McClellan, 37 F.3d 1240, 1247 (7th Cir. 1994) (internal quotation marks and citation omitted); see also Michigan v. DeFellipp, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime . . . ."). "Anyway a person's ability to explain away seemingly damning facts does not negate the existence of probable cause, even though it might provide a good defense should the case go to trial." Sroga v. Weiglen, 649 F.3d 604, 608 (7th Cir. 2011) (internal quotation marks and citation omitted).

Here, it is undisputed that Officer Guzman received information from a confidential informant that London was conducting crack cocaine sales from the basement apartment at 8010 S. Manistee Street, Chicago, Illinois. The CI informed Officer Guzman, *inter alia*, that London allowed him to inspect several clear plastic knotted bags of crack cocaine for quantity and quality prior to the sale; and, thereafter, London returned to the basement apartment with the remaining portions of crack cocaine. Prior to seeking a warrant, Officer Guzman consulted with an Assistant Cook County State's Attorney.[1] Officer Guzman then obtained the Search Warrant, supported by probable cause, for both London and the subject property. London concedes that when the officers executed the Search Warrant, he was found inside the apartment identified in the warrant, 8010 S. Manistee Street, Chicago, Illinois. Additionally, the officers recovered a clear plastic knotted bag of crack cocaine, bundles of narcotics packaging, and $155 of United

---

[1] Although the Court does not reach the issue, it nonetheless notes that "[c]onsulting with the prosecutor prior to applying for a search warrant provides additional evidence of that officer's objective good faith," United States v. Pappas, 592 F.3d 799, 802 (7th Cir. 2010) (internal quotation marks and citations omitted), and "goes far to establish qualified immunity," Kijonka v. Seitzinger, 363 F.3d 645, 648 (7th Cir. 2004).

10

States currency from the subject property. "If an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." United States v. Ganser, 315 F.3d 839, 843 (7th Cir. 2003) (citations omitted). The record is clear that—based on the facts and circumstances within the officers' knowledge at the time—there was probable cause to arrest London. Because probable cause existed for both the application of the Search Warrant and the arrest of London, summary judgment is appropriate on London's false arrest claim.

**C. Malicious Prosecution**

Next, London alleges that Officers Guzman, Stec, and Murphy maliciously commenced, facilitated, and/or continued a criminal action against him by creating false evidence and by giving false information in support of the Search Warrant. To prevail on his malicious prosecution claim, London "must show (among other things) that the criminal case ended in his favor, that the charge was not supported by probable cause, and that the accuser made the charge with malice." Deng v. Sears, Roebuck & Co., 552 F.3d 574, 576 (7th Cir. 2009) (citing Swick v. Liautaud, 662 N.E.2d 1238, 1242 (Ill. 1996)).

Defendants argue that London's bare assertion that the criminal proceedings were terminated in his favor at the December 8, 2011 preliminary hearing fails to meet his burden of showing a favorable termination. The Court notes that "dismissal by way of a *nolle prosequi* does not count as 'favorable' to the accused if 'the abandonment is for reasons not indicative of the innocence of the accused.'" Id. (quoting Swick, 662 N.E.2d at 1243). "But [the Court] can avoid Swick's complexities by skipping to the probable-cause question, for if the charge was supported by probable cause then other issues do not matter." Id. at 577. "In a malicious prosecution case, probable cause is defined as 'a state of facts that would lead a person of

ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.'" Williams, 733 F.3d at 759 (quoting Gauger v. Hendle, 954 N.E.2d 307, 329-30 (Ill. App. Ct. 2011)). "It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused." Id. (internal quotation marks and citation omitted).

London argues that because there was no proof of residency and because two other adult women were present in the apartment when the officers seized the narcotics, it is clear that there was no probable cause to institute and continue criminal proceedings against him for possession of a controlled substance pursuant to 720 Ill. Comp. Stat. 570/402. Under Illinois law, "[c]onstructive possession exists without actual physical dominion over the narcotics but where there is an intent and a capacity to exercise control and dominion over them." People v. Blue, 799 N.E.2d 804, 813 (Ill. App. Ct. 2003) (citing People v. Cunningham, 723 N.E.2d 778, 782 (Ill. App. Ct. 1999). "The exclusive dominion and control necessary to establish a defendant's constructive possession of a controlled substance is not negated by another person's access to the substance." People v. Bailey, No. 1-12-0741, 2013 WL 1914412, at *4 (Ill. App. Ct. May 8, 2013) (citing People v. Ingram, 907 N.E.2d 110, 115 (Ill. App. Ct. 2009). Indeed, "[t]he rule that possession must be exclusive does not mean, however, that the possession may not be joint." People v. Givens, 934 N.E.2d 470, 484 (Ill. 2010) (citations omitted). Additionally, while "[p]roof that a defendant had control over the premises where the drugs were located can help resolve this issue because it gives rise to an inference of knowledge and possession of the drugs," it is well established that "control of the premises is not a prerequisite to a conviction." Id. (citing People v. Adams, 641 N.E.2d 514, 519 (Ill. 1994)).

Here, the information available at the time of subscribing the criminal complaint included more than the mere presence of London at the premises where drugs were located and recovered. An Assistant Cook County State's Attorney approved both the Complaint for Search Warrant and the Search Warrant that was issued by the state-court judge, and signed each page of the documents. The record evidence shows that Officer Guzman received a tip from a reliable, confidential informant that London specifically—not a woman, or women—was conducting crack cocaine sales, and not merely possessing crack cocaine, from the basement apartment at 8010 S. Manistee Street, Chicago, Illinois. The CI recounted his most recent drug transaction with London: he was greeted by "Red" in the hallway of the apartment building, he observed "Red" go within the basement apartment but had to stand at the doorway of the apartment while he waited for "Red" to return, he was then presented with several clear plastic knotted bags of crack cocaine to inspect, and upon completion of the drug transaction, he observed "Red" carry the remaining bags of crack cocaine back into the basement apartment. A person of ordinary care and prudence, relying on the information available at the time of subscribing the criminal complaint, could have believed or entertained a strong and honest suspicion that London had the intent and capacity to exercise control and dominion over the crack cocaine recovered from the apartment as is required to commit possession of a controlled substance. Because London fails to provide evidence from which a jury could find that there was no probable cause to prosecute him for possession of a controlled substance, summary judgment on London's malicious prosecution claim is appropriate.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion is granted. Summary judgment is entered in favor of Defendants on all of Plaintiff's claims.

IT IS SO ORDERED.

ENTER:

*Charles R Norgle*
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: February 11, 2014